**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
Byron Geovanny Arevalo Fajardo, Carlos Martell, Jose Gutierrez, Juan Pereyra, Iñigo Mendoza Ramirez (a/k/a Eduardo Mendoza Ramirez), Miguel Garrido, Reymundo Chavez Hernandez (a/k/a Ramon Chavez Hernandez), Richard Xavier Hernandez, and Sebastian Alfredo Espinosa Vargas (a/k/a Sebby Espinosa Vargas), *on behalf of themselves and others similarly situated in the proposed FLSA Collective Action,*

                              *Plaintiffs*,

              - against -

WB Maintenance & Design Group Inc., W.B. & Son Construction Corp., Wladimir Briceno, Betty Briceno, Jeissy Briceno, and Jeimy Briceno,

                              *Defendants*.
------------------------------------------------------------------X

Case No.: 1:21-cv-5236


Hon. District Judge
Pamela K. Chen


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**A PRELIMINARY INJUNCTION AND**
<u>**MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**</u>


**LEVIN-EPSTEIN & ASSOCIATES, P.C.**
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, NY 10165
*Attorneys for Plaintiffs*

Dated: New York, New York
              December 9, 2021

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................................... 1

RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND ...................... 4

    A.  The Filing of the Complaint.................................................................................... 4

        i.   The Drivers and Manual Laborers ........................................................... 4

        ii.  The Manual Laborers ................................................................................ 5

    B.  The Service of the Summons and Complaint ...................................................... 6

    C.  Defendants Retaliate Against Plaintiffs .............................................................. 6

    D.  Alexander Briceno is Arrested for Assault .......................................................... 7

    E.  Plaintiffs' Motion for an Emergency Protective Order...................................... 8

    F.  The Temporary Restraining Order is Granted, and an Emergency Conference is Scheduled .......................................................................................................... 8

    G.  The Proposed First Amended Complaint............................................................ 9

LEGAL STANDARD ....................................................................................................................... 9

    I.  Legal Standard for a Preliminary Injunction .................................................... 9

    II.  Legal Standard for Leave to Amend the Complaint ....................................... 10

ARGUMENT..................................................................................................................................... 10

    I.  Plaintiffs are Entitled to a Preliminary Injunction ......................................... 10

    A.  Likelihood of Success on the Merits.................................................................. 11

        i.   The Bricenos Threatened to Disclose Certain Plaintiff-Employees' Immigration Statuses in Retaliation for Filing the Complaint................................. 12

        ii.  The Bricenos Assaulted Plaintiff Martell in Retaliation for Filing the Complaint................................................................................................ 12

iii.  The Bricenos Threatened to Assault the Other Plaintiffs in Retaliation for Filing the Complaint ........................................................................................................ 13

iv.  Alexander Briceno Assaulted and Battered Plaintiff Martell ............................. 13

B.  Sufficiently Serious Questions and Balance of Hardships ................................................ 14

C.  Public Interest Supports Injunctive Relief .................................................................... 15

II.  Plaintiffs Should be Granted Leave to Amend ................................................................. 15

**CONCLUSION** ................................................................................................................ **16**

## **TABLE OF AUTHORITIES**

**Cases**

*Alvarado v. GC Dealer Servs. Inc.*,
    511 F. Supp. 3d 321 (E.D.N.Y. 2021) ............................................................ 13

*Artica v. J.B. Custom Masonry & Concrete, Inc.*,
    2012 WL 11945654  (E.D.N.Y. 2012) .................................................. 3, 12, 14

*Bank v. Spark Energy, LLC*,
    2020 WL 6873436 (E.D.N.Y. 2020) ......................................................... 10, 15

*Centeno-Bernuy v. Perry*,
    302 F. Supp. 2d 128 (W.D.N.Y. 2003) ........................................................... 12

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010) ............................................................................ 10

*Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*,
    103 F. Supp.2d 1180 (N.D.Cal. 2000) ........................................................... 12

*Demirovic v. Ortega*,
    2017 WL 5196240 (E.D.N.Y. 2017) ............................................................... 11

*Flores v. Amigon*,
    233 F. Supp. 2d 462 (E.D.N.Y. 2002). ........................................................... 15

*Liu v. Elegance Rest. Furniture Corp.*
    2017 WL 4339476 (E.D.N.Y. 2017) ............................................................... 12

*P Lemus v. Pezzementi*,
    2020 WL 133591 (S.D.N.Y. 2020) ................................................................. 14

*Rodriguez v. Nat'l Golf Links of Am.*,
    2020 WL 3051559 (E.D.N.Y. 2020) .................................................... 3, 12, 15

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ............................................................................ 10

*Santana v. Rent A Throne, Inc.*,
    2018 WL 1027667 (E.D.N.Y. 2018) ............................................................... 11

*Ulbricht v. Ternium S.A.*,
    2020 WL 5517313 (E.D.N.Y. 2020) ............................................................... 10

*United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*,
    994 F.2d 105 (2d Cir. 1993)........................................................................... 14

*SEC v. Citigroup Global Mkts. Inc*.,
    673 F.3d 158 (2d Cir. 2012)........................................................................... 15

*Virgin Enters. Ltd. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003)........................................................................... 10

## **Statutes**

29 U.S.C. § 203(a) ........................................................................................... 11

29 U.S.C. § 215(a)(3) ....................................................................................... 11

Fed.R.Civ.P. 15(a)(2) ....................................................................................... 10

Fed.R.Civ.P. 65 ................................................................................................. 9

NYLL § 215(1)(a) ....................................................................................... 11, 13

Plaintiffs Byron Geovanny Arevalo Fajardo ("Fajardo"), Carlos Martell ("Martell"), Jose Gutierrez ("Gutierrez"), Juan Pereyra ("Pereyra"), Iñigo Mendoza Ramirez (a/k/a Eduardo Mendoza Ramirez) ("Ramirez"), Miguel Garrido ("Garrido"), Reymundo Chavez Hernandez (a/k/a Ramon Chavez Hernandez) ("Chavez Hernandez"), Richard Xavier Hernandez ("Xavier Hernandez"), Sebastian Alfredo Espinosa Vargas (a/k/a Sebby Espinosa Vargas) ("Vargas"), Jairo Rivas ("Rivas"), Elias Ordones ("Ordones"), and George Palta ("Palta", and collectively, the "Plaintiffs"), by and through the undersigned counsel, respectfully submit this Memorandum of Law, together with the affidavit of Plaintiff Martell (the "Martell Aff."), and the exhibits annexed thereto, and the declaration of Jason Mizrahi (the "Mizrahi Decl."), and the exhibits annexed thereto, in support of Plaintiffs' emergency motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 65, enjoining and restraining Defendants Wladimir Briceno, Betty Briceno, Jeissy Briceno, Jeimy Briceno, Alexander Briceno[1], and their employees, agents, representatives, servants and all persons acting on their behalf (collectively, the "Bricenos") from, *inter alia*, contacting, threatening, harassing, intimidating, following, and/or assaulting Plaintiffs, in any form, and in support of Plaintiffs' motion for leave to file a first amended complaint, pursuant to Fed.R.Civ.P. 15(a)(2), and as grounds thereto respectfully state as follows:

## PRELIMINARY STATEMENT

To quote the old aphorism – ***numbers don't lie***. Plaintiffs are twelve (12) former employees of Defendants'[2] maintenance and construction company, "W.B. Construction" a/k/a "Go Pro

---

[1] As set forth more fully in the Martell Aff., which is incorporated by reference herein, Alexander Briceno engaged in retaliatory assault on Plaintiff Martell, threatened to assault the other Plaintiffs, and to have threatened to report certain Plaintiffs to the INS (defined below). Alexander Briceno will be added as a Defendant as part of the claims supporting Plaintiffs' preliminary injunction.

[2] The term "Defendants" collectively refers to defendants WB Maintenance & Design Group Inc., W.B. & Son Construction Corp., Wladimir Briceno, Betty Briceno, Jeissy Briceno, and Jeimy Briceno.

Construction" ("WB Construction"), all of whom have been grossly exploited. Plaintiffs allege significant wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and Articles 6 and 19 of the New York State Labor Law ("NYLL"), for, *inter alia*, unpaid minimum wages, overtime compensation, untimely payments, spread-of-hours, and violations of the notice and record keeping requirements of the New York Wage Theft Prevention Act. [*Id*]. That twelve (12) employees have banded together in this case is indicative of Defendants' historical exploitative management.

Defendants' abusive tactics have continued and surfaced in this case which necessitates the instant emergency relief. Since the commencement of the action, Defendants have initiated a campaign of harassment and intimidation against Plaintiffs. At the center of this intimidation campaign is Alexander Briceno[3], who has threatened, and is continuing to threaten, to report certain Plaintiffs to the United States Immigration and Naturalization Service ("INS"). Far more concerning, Defendants' campaign has turned violent.

On the evening of December 2, 2021, at approximately 8:30 p.m., Alexander Briceno, Jeissy Briceno, and Jeissy Briceno's husband violently attacked Plaintiff Martel outside a laundromat in Woodside, NY.[4] During the assault, Alexander Briceno threatened the other Plaintiffs.[5] The viciousness of the assault has caused the Queens County Criminal Court to issue an order of protection for Plaintiff Martell as against only Alexander Briceno.[6] Defendants are ruthlessly targeting Plaintiffs in retaliation for complaining about Defendants' wage-theft policies.

---

[3] Alexander Briceno is Wladimir and Betty Briceno's son, and Jeissy and Jeimy Briceno's brother. [*See* Martell Aff. at ¶ 7 n3].
[4] [*See* Martell Aff. at ¶¶ 8-14].
[5] [*See* Martell Aff. at ¶ 11] (During the encounter, Alexander Briceno threatened Plaintiff Martel that: "this is going to happen to everyone that signed that paper" [*i.e.,* the Plaintiffs that joined the lawsuit], and that he would be "going after [Plaintiff Martell's] family now.")
[6] [*See* Martell Aff. at ¶ 22].

The circumstances here are dire – and necessitate immediate Court intervention to prevent further violence and escalation.

As demonstrated in Section I, *infra*, Plaintiffs are entitled to a preliminary injunction. As to the issue concerning threats to report certain Plaintiffs to the INS, case law is legion: an employer's threats to disclose a plaintiff-employee's immigration status is an adverse employment action for purposes of retaliation under the FLSA and NYLL.[7] The anti-retaliation provisions also extend to acts of physical harm against plaintiff-employees seeking to enforce their rights under the law.[8] It is extremely likely that Plaintiffs will succeed on their FLSA and NYLL retaliation claims, and assault and battery claims. Irreparable harm is also present. Left unchecked, the Bricenos pose a threat of serious harm to Plaintiffs, and their families.

Accordingly, the Court should enter an order temporarily enjoining and restraining the Bricenos from, *inter alia*, contacting, threatening, harassing, intimidating, following, and/or assaulting Plaintiffs.

The instant motion also respectfully requests leave to file the proposed first amended complaint (the "First Amended Complaint", or "FAC"), adding Alexander Briceno as an individual Defendant, and three (3) additional causes of action for: (i) retaliation under the FLSA; (ii) retaliation under the NYLL; and (iii) assault and battery under New York state law.[9] Plaintiffs' proposed First Amended Complaint further seeks to add factual allegations pertaining to opt-in

---

[7] *See Rodriguez v. Nat'l Golf Links of Am*., 2020 WL 3051559, at *2 (E.D.N.Y. 2020) ("Bad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights are actionable retaliation precisely because of their *in terrorem* effect.") (citation omitted).

[8] *See Artica v. J.B. Custom Masonry & Concrete, Inc*., 2012 WL 11945654, at *14 (E.D.N.Y. 2012) (awarding $482,611.30 in compensatory damages, punitive damages, and prejudgment interest, for assault and battery claims brought by plaintiff-employee.)

[9] Plaintiffs respectfully reserve the right to move for leave to file an additional cause of action for filing fraudulent information returns with the IRS in violation of 26 U.S.C. § 7434, after the appropriate stage of discovery.

Plaintiffs Rivas, Ordones and Palta [*see* Dckt. Nos. 23-25]. Leave to amend should be given here under Fed.R.Civ.P. 15(a)(2).

## RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND

For the sake of brevity, the relevant factual background is set forth in the Martell Aff., sworn to on December 8, 2021, and the exhibits annexed thereto. Additional information is provided in the accompanying Mizrahi Decl., dated December 8, 2021, and the exhibits annexed thereto.

### A. The Filing of the Complaint

The instant action was filed on September 20, 2021. [Dckt. No. 1]. The Bricenos are the owners and operators of "W.B. Construction" a/k/a "Go Pro Construction", a maintenance and construction company based in Queens, NY, that has been in business for over 18 years. [*See* FAC at ¶ 1]. The twelve (12) Plaintiffs worked at W.B. Construction as drivers and/or manual laborers. [*Id*. at ¶ 2]. While the exact nature of Plaintiffs' duties and responsibilities varied, each Plaintiff was exploited by Defendants' company-wide policy and practice of wage theft. [*Id*.].

### i. The Drivers and Manual Laborers

Four (4) Plaintiffs worked as drivers and manual laborers for Defendants, *to wit*: Plaintiffs Martell, Pereyra, Garrido, and Rivas. [*Id*. at ¶¶ 13, 21, 29, 45]. These Plaintiffs regularly worked five (5) to six (6) days per week: Monday, Wednesday and Friday from 5:45 a.m. to 6:00 p.m., for a total period of approximately 12.25 hours each day, and Tuesday, Thursday and sometimes Saturday from 6:45 a.m. to 6:00 p.m., for a total period of approximately 11.25 hours each day, for a total period of 59.25 to 70.5 hours during each of the weeks, respectively. [*Id*. at ¶¶ 112, 128, 114, 175].

### ii.     The Manual Laborers

Eight (8) Plaintiffs worked as manual laborers for Defendants, *to wit*: Plaintiffs Fajardo, Gutierrez, Ramirez, Chavez Hernandez, Xavier Hernandez, Vargas, Ordones and Palta. [*Id*. at ¶¶ 9, 17, 25, 33, 37, 41, 49, 53]. In general, these Plaintiffs regularly worked five (5) to six (6) days a week: 7:00 a.m. to 5:00 p.m., for a total of approximately ten (10) hours each day, and for a total period of approximately 50 to 60 hours during each of the weeks, respectively. [*Id*. at ¶¶ 103-104, 121, 136-137, 150, 159, 165, 183-184, 196].

Defendants' historic policy and practice was to pay Plaintiffs a flat salary[10], regardless of the number of hours that they actually worked. [*Id*. at ¶ 203]. These payments were paid late, in violation of NYLL § 191(1)(a). [*Id*. at ¶ 262-265]. Plaintiffs were not required to, and nor did they utilize a contemporaneous time tracking device, such as a time clock, that accurately recorded their hours worked. [*Id*. at ¶ 206]. As a result, Defendants operated their business with a policy of not timely paying Plaintiffs for all regular or overtime hours worked, in violation of the FLSA and NYLL. [*Id*. at ¶¶ 231-250].

Defendants also failed to provide Plaintiffs with accurate written wage notices and wage statements of, *inter alia*, their hours worked, hourly rate of pay, overtime rate of pay, and regular payday, in violation of NYLL § 195(3). [*Id*. at ¶¶ 251-258].

The initial Complaint [Dckt. No. 1] (the "Complaint") asserts Eight (8) Causes of Action against Defendants.

FIRST:        Unpaid minimum wages under the FLSA;

SECOND:     Unpaid overtime wages under the FLSA;

THIRD:       Unpaid minimum wages under the NYLL;

---

[10] During the relevant period, Plaintiffs were allegedly paid between $80 to $200 per day. [FAC at ¶¶ 106-108, 114-117, 124, 131-132, 139-140, 146, 151-153, 161, 168-171, 178-179, 187-192, 198-199].

| | |
|---|---|
| FOURTH: | Unpaid overtime wages under the NYLL; |
| FIFTH: | Unpaid spread-of-hours premiums under the NYLL; |
| SIXTH: | Failure to provide wage notices under the NYLL and Wage Theft Prevention Act; |
| SEVENTH: | Failure to provide wage statements under the NYLL and Wage Theft Prevention Act; and |
| EIGHTH: | Failure to pay timely wages under the NYLL. |

[Dckt. No. 1 at ¶¶ 167-201].

## B. The Service of the Summons and Complaint

On September 21, 2021, Plaintiffs filed a Request for Issuance of Summons as to Defendants. [Dckt. No. 21]. An electronic summons was subsequently issued later that day. [Dckt. No. 22]. On October 12, 2021, Defendants were served a Summons and Complaint, with a Civil Cover Sheet. [*See* Dckt. Nos. 26-31]. Pursuant to Fed.R.Civ.P. 12, an answer or other response to the Complaint was due on or before November 2, 2021. [*Id.*].  On October 19, 2021, proof of service was filed with the Court. [*Id.*].

On November 1, 2021, Defendants appeared in the action through counsel, Stephen D. Hans, and filed an answer with affirmative defenses in response to the Complaint. [*See* Dckt. Nos. 32, 33]. The law firm of Koutsoudakis & Iakovou Law Group PLLC appeared in this action on behalf of Defendants on November 16, 2021, and filed a motion to substitute as counsel on December 1, 2021. [Dckt. Nos. 37-41].

Thus, Defendants had both actual and constructive knowledge of the instant action.

## C. Defendants Retaliate Against Plaintiffs

Shortly after Defendants became aware of Plaintiffs' lawsuit they initiated a campaign of threatening, harassing, intimidating and retaliating against Plaintiffs. [Martell Aff. at ¶ 6]. At the

center of this intimidation campaign is Alexander Briceno[11], who has threatened, and is continuing to threaten, to report certain Plaintiffs to the INS. [*Id*. at ¶ 7]. Far more concerning, Defendants' campaign turned violent. [*Id*. at ¶ 8]. On the evening of December 2, 2021, at approximately 8:30 p.m., Alexander Briceno, Jeissy Briceno, and Jeissy Briceno's husband violently attacked Plaintiff Martel. [*Id*. at ¶ 9]. The encounter took place at or near the "Turbo Laundry Limited" Laundromat located at 6201 Northern Blvd # C, Woodside, NY 11377. [*Id*. at ¶ 10]. During the encounter, Alexander Briceno threatened Plaintiff Martel that: "this is going to happen to everyone that signed that paper" [*i.e.,* the Plaintiffs that joined the lawsuit], and that he would be "going after [Plaintiff Martell's] family now." [*Id*. at ¶ 11]. During the encounter, Jeissy Briceno stated "this is what happens when you try to take my money." [*Id*. at ¶ 12].

Plaintiff Martel witnessed Jeissy Briceno recording the violent encounter. [*Id*. at ¶ 13].

Plaintiff Martel sustained injuries to his head, face and neck. [*Id*. at ¶ 14].

After the attack, Plaintiff Martel photographed himself to document his injuries. [*Id*. at ¶ 15].

### D.  Alexander Briceno is Arrested for Assault

On Friday, December 3, 2021, at approximately 5:42 p.m., Plaintiff Martell reported the assault to the New York City Police Department, at the 114th Precinct in Queens, NY.  [*Id*. at ¶ 16]. Plaintiff Martell reported the assault to Officer Matthew Morrison, who identified himself by his name and shield number, 21150. [*Id*. at ¶ 17]. A criminal complaint report was subsequently filed against Alexander Briceno under Complaint # 2021-114-012428 (the "Complaint Report"). [*Id*. at ¶ 18].

---

[11] Alexander Briceno is Wladimir and Betty Briceno's son, and Jeissy and Jeimy Briceno's brother. [*See* Martell Aff. at ¶ 7 n3].

According to the Complaint Report, Alexander Briceno was arrested on December 7, 2021. [*Id*. at ¶ 19]. According to publicly available information from the New York State Unified Court System, Alexander Briceno appeared for an arraignment hearing in the Queens County Criminal Court, Part "APAR1" before the Honorable Judge Joanne Watters on December 8, 2021. [*Id*. at ¶ 20]. Alexander Briceno was charged with one count of assault in the third degree (N.Y. Penal Law § 120.00(1)), and one count of harassment in the second degree (N.Y. Penal Law § 240.26(1)). [*Id*. at ¶ 21].

Judge Watters entered a temporary order of protection against Alexander Briceno, in favor of Plaintiff Martell, only. [*Id*. at ¶ 22]. Of critical importance, the temporary order of protection does not cover any of the other Plaintiffs. [*Id*. at ¶ 23]. After the arrangement hearing, Alexander Briceno was released on recognizance. [*Id*. at ¶ 24].

This criminal matter is captioned, *People of the State of New York v. Alexander Briceno,* Case No: CR-025670-21QN. [*Id*. at ¶ 25].

### E. Plaintiffs' Motion for an Emergency Protective Order

On December 3, 2021, *i.e.,* one day following the violent attack on Plaintiff Martell, Plaintiffs filed a letter motion for an emergency protective order, enjoining and restraining the Bricenos from, *inter alia*, any further retaliation against Plaintiffs. [*See* Dckt. No. 42].

Defendants' submitted a response to Plaintiffs' motion for an emergency protective order on December 6, 2021. [Dckt. No. 45]. Defendants' response tacitly ignores the charges that Defendants threatened to report certain Plaintiffs to the INS. [*See, generally, id*.]. Defendants' response does not dispute that a violent altercation took place on December 2, 2021.

### F. The Temporary Restraining Order is Granted, and an Emergency Conference is Scheduled

On December 6, 2021, the Court granted Plaintiffs' emergency motion for a temporary restraining order, as modified in an order entered that same day, and scheduled an in-person,

emergency hearing on whether a preliminary injunction should be issued, for December 20, 2021. [Dckt. No. 46].

### G. The Proposed First Amended Complaint

Plaintiffs' proposed First Amended Complaint seeks to add Alexander Briceno as an individual Defendant, and add three (3) additional causes of action for: (i) retaliation under the FLSA; (ii) retaliation under the NYLL; and (iii) assault and battery under New York state law. [*See, generally,* FAC]. Plaintiffs' proposed First Amended Complaint further seeks to add factual allegations pertaining to opt-in Plaintiffs Rivas, Ordones and Palta [*see* Dckt. Nos. 23-25]. [*Id.*]. For the Court's convenience, a copy of the proposed First Amended Complaint is attached to the Mizrahi Decl. as **Exhibit** "**A**", and a redlined version of the First Amended Complaint is attached to the Mizrahi Decl. as **Exhibit** "**B**".

## LEGAL STANDARD

### I.    Legal Standard for a Preliminary Injunction

Preliminary injunctions and temporary restraining orders may be granted under Fed.R.Civ.P. 65[12] when the plaintiff establishes: (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation"; (2) that they are "likely to suffer irreparable injury in the absence of an injunction"; (3) "the balance of hardships tips in [their] favor" ("decidedly" so where there are "serious questions going to the merits"); and (4) the "'public interest would not be disserved' by the issuance of a preliminary

---

[12] Fed.R.Civ.P. 65 provides in relevant part as follows:

      (a)  Preliminary Injunction. (1) Notice. The court may issue a preliminary injunction only on notice to the adverse party.

      (b)  Temporary Restraining Order. (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney…

*See* Fed.R.Civ.P. 65.

injunction." *Salinger v. Colting,* 607 F.3d 68, 74, 79-80 (2d Cir. 2010) (citations omitted); *see also Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 145 (2d Cir. 2003).  The "'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010).

## II.      Legal Standard for Leave to Amend the Complaint

Under Fed.R.Civ.P. 15(a), a court "should freely give leave" to a party to amend its pleading "when justice so requires." Fed.R.Civ.P. 15(a)(2). "This rule is a 'permissive standard,' although leave to amend may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Ulbricht v. Ternium S.A.*, 2020 WL 5517313, at *12 (E.D.N.Y. 2020) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), and *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

In exercising its discretion, a district court must bear in mind that the overall goal is "to secure the just, speedy, and inexpensive determination of every action." *Bank v. Spark Energy, LLC*, 2020 WL 6873436, at *2 (E.D.N.Y. 2020), *aff'd*, 860 F. App'x 205 (2d Cir. 2021) "The Rules themselves provide that they are to be construed 'to secure the just, speedy, and inexpensive determination of every action.'" *Id.* (quoting Fed.R.Civ.P. 1) (internal citation omitted). Indeed, this is the "paramount command" of the Federal Rules of Civil Procedure. *Id.* (citing *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016)).

### ARGUMENT

## I.      Plaintiffs are Entitled to a Preliminary Injunction

In this case, the Court should respectfully grant the requested relief because Plaintiffs can demonstrate each of the elements for a preliminary injunction.

### A. Likelihood of Success on the Merits

Plaintiffs have demonstrated a likelihood of success on the merits of their FLSA and NYLL retaliation claims, and assault and battery claims. The FLSA provides that it is "unlawful for any person…to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]…" 29 U.S.C. § 215(a)(3). Under the FLSA, a person is defined as any "individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). Thus, the anti-retaliation provision of the FLSA does not apply only to employers; it applies to "any person." *Demirovic v. Ortega*, 2017 WL 5196240, at *3 (E.D.N.Y. 2017) (citations omitted).

To establish a *prima facie* claim of retaliation in violation of the FLSA, a plaintiff must show "(1) participation in [a] protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Santana v. Rent A Throne, Inc.*, 2018 WL 1027667, at *7 (E.D.N.Y. 2018) (citations and quotations omitted). As set forth more fully herein, Plaintiffs have established a *prima facie* case of retaliation.

The analogue section regarding retaliation under the NYLL provides that no employer or his or her agent "shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter[.]" NYLL § 215(1)(a). The same standard for a claim of retaliation under the FLSA also applies to a claim of retaliation under NYLL. *Santana*, 2018 WL 1027667 at *7 (citation omitted).

i. **The Bricenos Threatened to Disclose Certain Plaintiff-Employees' Immigration Statuses in Retaliation for Filing the Complaint**

Case law is legion: an employer's threats to disclose a plaintiff-employee's immigration status is an adverse employment action for purposes of retaliation under the FLSA and NYLL. *See Rodriguez v. Nat'l Golf Links of Am.*, 2020 WL 3051559, at *2 (E.D.N.Y. 2020) ("Bad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights are actionable retaliation precisely because of their *in terrorem* effect.") (citation omitted).

Plaintiffs have undertaken a protected activity under the FLSA in filing the instant litigation and the Bricenos knew of the lawsuit within a few days after it was filed. [*See* Dckt. Nos. 21-22, 26-31, 32-33, 37-41]. The Bricenos' threats to report certain Plaintiffs to the INS after the filing of the lawsuit constitute an adverse employment action. [*See* Martell Aff. at ¶ 7]. *See, e.g., Liu v. Elegance Rest. Furniture Corp.* 2017 WL 4339476, at *5 (E.D.N.Y. 2017) (finding that defendant-employer's text messages threatening to disclose to authorities plaintiff-employee's immigration status was an adverse employment action for the purposes of FLSA retaliation); *Centeno-Bernuy v. Perry,* 302 F. Supp. 2d 128, 136 (W.D.N.Y. 2003) (migrant workers demonstrated likelihood of success on retaliation claims, necessitating entry of protective order); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.,* 103 F. Supp.2d 1180 (N.D.Cal. 2000) (reporting a plaintiff to the INS in retaliation for a plaintiff having complained under the FLSA constituted an adverse employment action).

ii. **The Bricenos Assaulted Plaintiff Martell in Retaliation for Filing the Complaint**

The anti-retaliation provisions also extend to acts of physical harm against plaintiff-employees seeking to enforce their rights under the law. *See Artica*, 2012 WL 11945654 at *14 (awarding $482,611.30 in compensatory damages, punitive damages, and prejudgment interest, for assault and battery claims brought by plaintiff-employee.)

The violent assault on Plaintiff Martel also constitutes an adverse employment action. During the encounter, Alexander Briceno threatened that: "this is going to happen to everyone that signed that paper" [*i.e.,* the Plaintiffs that joined the lawsuit], and that he would be "going after [Plaintiff Martell's] family now." [*See* Martell Aff. at ¶ 11]. During the encounter, Jeissy Briceno stated "this is what happens when you try to take my money." [*Id.* at ¶ 12]. Thus, there is sufficient evidence to support a finding of a causal connection between Plaintiffs' protected activity under the FLSA and the assault on Plaintiff Martell.

### iii.   The Bricenos Threatened to Assault the Other Plaintiffs in Retaliation for Filing the Complaint

The anti-retaliation provision[13] of the NYLL "explicitly reaches threats as well as fully executed retaliatory actions." *Alvarado v. GC Dealer Servs. Inc*., 511 F. Supp. 3d 321, 358 (E.D.N.Y. 2021).  "Generally speaking, the test is met if the conduct complained of might have dissuaded a reasonable worker from making or supporting similar charges." *Id*. (citations omitted).

During the violent assault on Plaintiff Martell, Alexander Briceno and Jeissy Briceno threatened that: "this is going to happen to everyone that signed that paper" [*i.e.,* the Plaintiffs that joined the lawsuit], that Alexander Briceno would be "going after [Plaintiff Martell's] family now," and that "this is what happens when you try to take [Jeissy Briceno's] money." [*See* Martell Aff. at ¶¶ 11-12]. Alexander and Jeissy Briceno's threats, targeted against the other Plaintiffs, constitute an adverse employment action for purposes of retaliation.

### iv.   Alexander Briceno Assaulted and Battered Plaintiff Martell

Under New York law, an assault is "an intentional placing of another person in fear of imminent harmful or offensive contact." *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994

---

[13] Section 215(1) of the NYLL provides, in pertinent part: "No employer…shall discharge, **threaten**, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…" N.Y. Labor Law § 215(1)(a) (emphasis added).

F.2d 105, 108 (2d Cir. 1993). A battery is "an intentional wrongful physical contact with another person without consent." *Id.* The terms assault and battery do not in any way depend "on the degree of violence" because the law "totally prohibits the first and lowest stage, since every individual's person is sacred and no other has the right to touch it." *Id.* (citations omitted).

Plaintiff Martell has also demonstrated a likelihood of success on the merits on his assault and battery claim. *See, e.g., Artica*, 2012 WL 11945654 at *7 (defendant-employer liable for assault and battery after physically attacking, and releasing an attack dog, on plaintiff-employee); *P Lemus v. Pezzementi,* 2020 WL 133591, at *6 (S.D.N.Y. 2020) (assault and battery allegations arising out of the filing of a wage-and-hour action sufficient where Plaintiff identified his assailant, the date of the attack, and the manner of the attack).

### B. Sufficiently Serious Questions and Balance of Hardships

Even assuming, *arguendo,* that Plaintiffs have failed to establish a likelihood of success on the merits, they are still entitled to a preliminary injunction because they have established sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in their favor. For the reasons already stated, there are serious questions going to the merits of Plaintiffs' claims of retaliation making them fair ground for litigation. Further, the balance of hardships tips decidedly in Plaintiffs' favor. The failure to grant an injunction will (literally) harm Plaintiffs. Of critical importance, the temporary order of protection entered by the Honorable Judge Joanne Watters on December 8, 2021 against Alexander Briceno does not cover any of the other Plaintiffs. [Martell Aff. at ¶¶ 22-23]. Without the sought-after injunctive relief, Plaintiffs will face bodily harm, continue to face difficulty in prosecuting the instant litigation, and could face criminal and administrative action against them because of the Bricenos' accusations. In contrast, if an injunction is issued, the Bricenos will not suffer any

14

hardship. They will simply be prevented from physically assaulting Plaintiffs, and continue to repeat their baseless claims about Plaintiffs to government authorities.

### C. Public Interest Supports Injunctive Relief

Further, public interest tilts heavily in favor of injunctive relief, as a matter of law. "The 'public interest' prong simply means that if injunctive relief is granted, a court should ensure that the injunctive provisions of the order do not harm the public interest." *SEC v. Citigroup Global Mkts. Inc*., 673 F.3d 158, 163 n.1 (2d Cir. 2012). There is undoubtedly a public interest in allowing employees to enforce their rights, regardless of their immigration status, without fearing retaliation or assault. But the Court need not address whether some public interest is served or not in order to grant preliminary relief. *See Flores v. Amigon,* 233 F. Supp. 2d 462, 464 (E.D.N.Y. 2002). The Court only need find that the public interest is not harmed. Here, there are entirely private interests at stake, and the Court should find that the public interest is not harmed by a grant of preliminary injunctive relief.

### II.   Plaintiffs Should be Granted Leave to Amend

In light of the purpose of Fed.R.Civ.P. 15 – indeed all of the Federal Rules of Civil Procedure – to ensure the "just, speedy, and inexpensive" resolution of cases, the Court should exercise its discretion to grant Plaintiffs' leave to amend the Complaint. *Bank*, 2020 WL 6873436 at *2 (quoting Fed.R.Civ.P. 1) (internal citation omitted).

As set forth more fully in § I(A), *supra*, Plaintiffs have established a *prima facie* case for their three proposed additional causes of action for: (i) retaliation under the FLSA; (ii) retaliation under the NYLL; and (iii) assault and battery under New York state law. All three claims justify adding Alexander Briceno as an individual Defendant to the action. Thus, Plaintiffs' proposed claims are not futile, and are supported by detailed factual allegations. *See Rodriguez,* 2020 WL

3051559 at *2 (granting motion to amend complaint to add claims of retaliation under the FLSA and NYLL). Leave to amend should, therefore, be granted.

## **CONCLUSION**

For the reasons stated above, it is respectfully submitted that the Court: enter an order[14] temporarily enjoining and restraining the Bricenos from, *inter alia*, contacting, threatening, harassing, intimidating, following, and/or assaulting Plaintiffs, and grant Plaintiffs leave to file the proposed First Amended Complaint, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
         December 9, 2021

                                   LEVIN EPSTEIN & ASSOCIATES, P.C.

                                   */s Jason Mizrahi*
                                   Jason Mizrahi, Esq.
                                   Joshua Levin-Epstein, Esq.
                                   60 East 42nd Street, Suite 4700
                                   New York, New York 10165
                                   Tel No.: (212) 792-0048
                                   *Attorneys for Plaintiffs*

---

[14] A proposed temporary emergency restraining order and protective order is attached to the Mizrahi Decl. at **Exhibit "C"**.